Pece, J:
delivered the opinion of himself and
Judge Whyte. Judge CatRON having been concerned as counsel, did not sit on the hearing of the cause.
1. We will consider if the judgment against the administrator is a lien on the land descended to the heir.
2. Supposing the verdict and judgment as taken in this [355] case against the administrator to have been obtained improperly, shall the plaintiff at law be so far concluded by it that he shall not be permitted to impeach it in equity P
3. Supposing the complainant’s case made out in proof, and that the judgment .may be impeached, who shall bear the loss, ■ — ■ the creditor, or the heir P
4. And last, we will consider the questions arising upon the Statutes of Limitations.
As to the first question. The plaintiff, having negatived the plea of fully administered, and procured a judgment against the personal representative for his debt, could not have his scire facias against the heir; for by the provision of the Act of 1784, ch. 11, the scire facias is given on the finding of the plea of fully administered in favor of the personal representative. This case not being provided for by any Act of Assembly, it is insisted that he was compelled to come into this Court for relief; and that, as the Act of Assembly subjects lands, as well as personal property to the payment of debts; therefore, according to the rule that a remedy must exist somewhere for every injury, and there being none at law, this Court will proceed to give relief by awarding to the complainant execution against the real estate which has descended to the heirs.
When we examine the provisions of the Act of 1784, it appears obvious that before the judgment could be made effectual against the land which had descended to the heir, something more was required than an execution. •This proves that whether the judgment could be considered a lien, depended upon what might be urged by the heir when he had his day given him-in court. The land could not be sold merely on the signing of judgment mentioned in that Act, when the creditor had established his demand. The several Acts of Assembly, when viewed together, take a distinction between the effects of a judgment against the ancestor rendered before his death, and one rendered against his executor or administrator afterwards. The reason was obvious. ( The ancestor contested personally with the *651 creditor the justice of his claim, and at the same time held both real and personal estate subject, as the Act of 1777 [356] had placed it, to the satisfaction of the judgment, which being rendered in the lifetime of the ancestor, before descent cast, created the lien.
The case was widely different when a descent happened before the judgment ; for although the feudal policy which protected the heir to so great an extent had been stricken at by the passage of those acts, still our policy had not been carried to such an opposite extreme as to concede to the heir no rights or power whatever to protect his real estate, which had descended to him. It does not so far intend to deprive him of every guard that his estate should depend wholly on the acts of others to whom the management of the personal estate had been confided. To place this in the clearest point of view, consider the situation of the guardian of an infant heir, and that of an administrator. . The relative duties of each are quite inconsistent, and sometimes diametrically opposite. The business of the one is to collect the personalty, marshal the assets, pay debts, and make distribution of the remainder; that of the guardian is to save for the heir, when he shall arrive at age, the real estate and all that appertains to it. It must have been seen by the Legislature that, considering the multifarious and complex character of the duties of the administrator, it must sometimes happen that there would be a waste and mismanagement of the personal estate, and in that event the rights of the heir are not overlooked; and the provision of the Statute giving him the right, on the scire facias, to question and examine into the conduct of the administrator, supposes, that, should he be successful in fixing the administrator with waste or mismanagement, the heir would thereby derive some benefit. If the policy of the law was to guard only the rights of the creditor, and compel a satisfaction of his debts under any circumstances, why not declare in the Act that execution should issue against the real as well as the personal estate, upon the judgment against an executor or administrator, as upon the judgment against the ancestor i’n his lifetime? The reason is easily perceived; the heir, if such was the law, would be deprived of his estate unheard; he would, in every instance, be thrown upon [357] the integrity and wisdom of the administrator, and the administrator would, in effect, be filling the inconsistent offices of guardian for the heir and administrator of the personal estate. The heir, placed solely within the power of the administrator, would depend upon him for the protection of all his rights, and if the administrator were wanting in integrity, or negligent in the performance of his duty, what would become of the infant’s estate ? Hence we come to the conclusion that the signing of the judgment in the contest with the administrator is not a lien on the land, and that the lien, if created at all, must be fixed by something subsequently to be done. The signing of the judgment was permitted under the presumption that whatsoever hád been done *652 in a tribunal of justice, had been rightfully transacted ;.but it would only be so considered between those who were parties to it. The heir had a right to' contest it (the extent of which right will hereafter be considered), but still his right to contest it might by him be waived, which is another reason for the signing of judgment; if waived by the heir after the service of scire facias, then the judgment would,, by reason of his silence, be made to attach upon the land.
Secondly, if the judgment at law against the administrator was improperly obtained, shall not the plaintiff be so far concluded by it that he shall be bound in this Court ? It is conceded on the part of the complainant that he is without remedy at law; this arises, it is urged, because the assets were wasted by the administrator since the rendition of the judgment, and both the administrator and his securities have become insolvent; therefore, that this fact, with others, evinces so much hardship and intervening accident to the injury of the creditor who procured the judgment that he will not be left without a remedy.
As a general rule it may safely be laid down that every one in court is bound by proceedings to which he is a party. Neither the administrator nor the complainant could aver anything against the conclusiveness of this judgment; and although, as it was decided by this Court in the case of Neal, guardian, against Combs, and in Strange, 88, Bul. N. P. 233, 2 Price, 425, and the authorities referred [358] to in Bacon’s Abridgment (Evidence), that the heir is not concluded, yet it would not follow that the plaintiff in those proceedings shall not be concluded. Let us suppose that the verdict of the jury had been in favor of the administrator, and that upon a scire facias against the heir, such matter had again been contested and found for the heir, that there were personal assets sufficient to satisfy the creditor, what would have been the judgment? The very words of the Act are, “ that the creditor shall have execution, not only against the goods and chattels of the deceased debtor, but against the goods and chattels, lands and tenements, of the personal representative.” This is the expression of one remedy, and because of the extension to which it is carried, may well be taken as the exclusion of any other. Is it possible to suppose that the Legislature intended to provide so amply for the creditor of a deceased man, that he should have a lien on the whole personal and real estate of the administrator with the right also to sue his securities, and finally be permitted to reach also the real estate descended to the heir ?' I think it would require a great degree of credulity to believe so. Is it not more rational to adhere to the Act, take the judgment that provides, and there rest? This would make the creditor vigilant; he would hazard nothing in seeking his rights where he first resorts ; but once admit that many contingencies may happen, and yet that he is safe so long as he can find land descended, and an heir would always tremble for the safety of his estate.
*653 Taking the second and fifth sections of the Act of 1784 in connection, it was clearly the intention of the Legislature to reach the lands in the hands of the heir, in case there was a finding by the jury of no assets, or not sufficient to satisfy the demand. Then, if the creditor cannot have his demand satisfied out of the real estate, where the heir, unconnected with the creditor in the inquiry between such heir and the personal representative, shall prove assets on the collateral issue, surely it shall not be allowed if the creditor establish the same fact. It is much mor.p probable there were sufficient assets, when the finding is produced by the efforts of the person whom the law did not choose conclusively [359] to trust on that point. The creditor would not feel so deep an interest in protecting the heir as the heir himself would, and that is one reason why the law allows the collateral issues, though doubtless the principal reason was that he should not be stripped of his inheritance unheard.
There is yet another aspect in which this question may be viewed. The ground taken for relief is that the judgment is a lien. It should be remembered that the lien of a judgment is given not by the express letter, but by construction of law. Then I would ask, is the construction of law to be so far extended by a court of equity as to reach inheritances cast upon heirs unaccompanied with any portion of the personal estate of the ancestors ? So far from it, the law has not only placed the personalty between, but has actually placed the whole estate of the personal representative in a situation to be reached by a devastavit. Heirs, therefore, are the peculiar favorites of these laws, and were never meant to be reached by construction ; to give such interpretation would be not to construe, but to create acts of Assembly vindictive to the heir. Still it must be admitted that if frauds had intervened, and the heir could be fixed as a participator therein, I will not pretend to say that he might not be reached and made liable for the debts, but such proceeding would not be founded upon the supposition that the judgment against the administrator created a lien on the land of the heir, it would rest on a wholly different principle. That, however, is not the case before us.
The foregoing reasons would suflice to determine this case. There is another point which it may not be irrelevant to discuss. Let it be granted that the personal estate has been wasted, and that the complainant may open and examine into his own proceedings had with the administrator, so as to render the land liable. Situated as these parties are, who ought to lose ? for it appears that a loss must be sustained.
The personal representative is appointed by the County Court. It is their duty to take good and sufficient security, that creditors, so far as they establish demands, may be secure, and that distributees may receive the residue. Now [360] in this appointment, and in requiring security, the heir has no more to do than the creditor; it is the act of the Court, inde *654 pendent of the wish, of either. In case, then, of the waste of the personal estate, who shall bear the loss ? Is it more reasonable that it should fall upon the heir, who has no more power than the creditor (indeed, not so much) to coerce the administrator to pursue a right course ? The creditor can sue the administrator for his demands ; the heir cannot compel the administrator to pay the debts of the estate; he may have a wish that it should be done, but what facilities have the laws given him ? Then to tie up the hands of the heir, first, as to the appointment of the administrator; secondly, as to the management of the personal estate ; thirdly, as to the bringing and prosecuting of suits for debts due by the ancestor, and yet say that finally this estate shall be swept away because an accident has happened in managing the personal estate, would be casting upon the heir a most unnatural and intolerable burden.
Upon the right of the heir to plead the Statute of Limitations, we are of opinion that he may insist upon it, and that he is not limited on the scire facias to contest only the finding of the plea of fully administered, and we accord-in the principles laid down in the case of Neal, guardian, v. Combs. But where the Statute of three years, the Act of 1715, ch. 7, § 25. will apply, the heir can only insist upon it up to the time of bringing the action against the administrator; if the administrator then could have availed himself of it, and waives it, the heir, when called in, may urge it. It is said, however, because an action of debt could have been brought, that this Statute cannot be made to apply. To this we answer that we. will look to what has been done, not to that which might have been done. To this action on the case the Statute would have application.
We are moreover of opinion that the Act of 1715, ch. 48, § 9, of seven years, will operate as a bar, and that that Act is in force we consider one of the best established positions litigated in our Court. It is so held in North Carolina, and a concurrence of opinion in the judges of this State, even if we had doubts, would incline us to pause before we expressed them.
[361] Lastly, is the heir bound by the promise of the administrator so made, as to take the case out of the operation of the Statute ? Such promise, personally made by the administrator, unless in writing for a good consideration, will not touch the personal or real estate of the administi’ator himself. Would if not be hard then, that the promise of one not an agent, not put in the office he fills by the heir, should have a binding influence upon him ? It would be binding one man, perhaps to the whole extent of his estate, by the will of another ; it would be, in fact, to deprive him altogether of the quiet and repose a salutary statute was enacted to give, by the caprice, sense of honor, or malice of another man.
Decree reversed and bill dismissed.